# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

ESTATE OF JONATHAN M. KENDRICK, )
*et al.*, )
             )
         Plaintiffs, )
     v.                        )          No. 24-00596-CV-W-BP
             )
AW DISTRIBUTING, INC., *et al.*, )
             )
         Defendants. )

## <u>ORDER GRANTING DEFENDANTS' MOTION TO CHANGE VENUE</u>

This case is a potential class action arising from the death of Jonathan Kendrick ("Decedent") by an overdose of aerosol inhalants sold and manufactured by Defendants. Decedent's father ("Plaintiff") brings claims on behalf of himself and Decedent's Estate, including strict products liability (design defect, manufacturing defect, and failure to warn), negligence, and wrongful death. Defendants have filed a Motion to Change Venue, or in the alternative, Transfer the Case for Convenience, (Doc. 55), which, for the reasons set forth below, is **GRANTED.** The case will be transferred to the District of Kansas.

## <u>BACKGROUND</u>

(Doc. 61-1, ¶ 6.)[1] Decedent held a Kansas State ID but had lived in both Kansas and Missouri.[2] (*See* Doc. 61-1, ¶¶ 4-7; Doc. 55-1.) No Defendants are citizens of Missouri; none have a principal place of business in Missouri.[3] (*See* Doc. 1, ¶¶ 34-53.)

---

[1] All page numbers correspond to the numbers assigned in the CM/ECF system.

[2] The parties dispute whether Decedent was a resident of Kansas or Missouri at the time of his death. Ultimately, this fact is not material to the Court's holding, so the Court declines to discuss it further. *See*, *e.g.*, *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("[I]f Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly.").

[3] Accordingly, jurisdiction in this case is based on diversity of citizenship, under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.

In 2011, Decedent began abusing computer dusters by inhaling them, a practice known as "huffing." Computer dusters are pressurized cans used to clear dust and debris from keyboards and computers without damaging the equipment. Computer dusters include a compound called 1-1, Difluoroethane ("DFE") which, when inhaled, produces a high and can cause addiction, injury, and death. (*E.g.*, Doc. 1, ¶ 9.) Plaintiff alleges that Decedent became addicted to DFE. (*See*, *e.g.*, Doc. 1, ¶ 107.) On September 25, 2022, Decedent died at a Motel 6 in Overland Park, Kansas, after inhaling computer dusters. (Doc. 55, p. 9, ¶ 11.) Decedent had bought and huffed numerous cans of duster he purchased from a Super Walmart in Kansas, from an Office Depot in Missouri, and from a MicroCenter in Kansas. (Doc. 55, p. 9, ¶ 11; *see also* Doc. 55, p. 8, ¶ 10, Doc. 61, pp. 6-7, ¶ 12.) Of the 35 cans located in the motel room, 27 were empty. (Doc. 55, p. 9, ¶ 11.)

Plaintiff asserts that most of Decedent's duster purchases were made in Missouri. Specifically, he claims that all of his 2019 purchases, almost all of his 2020 purchases, 18% of his 2021 purchases, and 81% of his 2022 purchases were made in Missouri. (Doc. 61, pp. 6-7, ¶ 12). Defendants point out that all of Decedent's purchases at MicroCenter were in Kansas. (Doc. 55, p. 8, ¶ 10.) Decedent used cans either purchased from or manufactured by Defendants to fuel his addiction before his death,[4] and cans from each source were located in the motel room where he died.

After Decedent's death. Plaintiff brought this case, asserting the following claims:

- Count I: Strict Products Liability for design defects (the inclusion of DFE and the ineffectiveness of the bitterant used to deter huffing);

- Count II: Strict Products Liability for failure to warn (regarding a variety of injuries from huffing);

---

[4] Defendants AW Distributing, Inc., AW Product Sales & Marketing, Inc., (collectively "AW") Norazza, Inc. ("Norazza"), and Technical Chemical Co. ("TCC") contracted with Walmart, Inc., Wal-Mart Stores East, L.P., and Wal-Mart Stores East, L.L.C. (collectively "the Walmart Defendants") to design, manufacture, test, label, market, and distribute computer dusters for sale. AW also contracted with the ODP Corporation, ODP Business Solutions, LLC, and Office Depot, LLC (collectively "the Office Depot Defendants") for the same purpose.

2

- Count III: Strict Products Liability for manufacturing defects (including ineffectiveness of the bitterant);

- Count IV: Negligence (for the inclusion of DFE without an effective bitterant);

- Count V: Negligence for selling dusters directly to the public;

- Count VI: Wrongful Death related to Decedent's death from DFE overdose;

- Count VII: Survivorship claim related to Decedent's death from DFE overdose;

- Count VIII: Breach of Implied Warranty of Merchantability; and

- Count IX: Breach of Express Warranty regarding product safety.[5]

Plaintiff also seeks class certification under Rule 23(c)(4) to litigate specific issues on behalf of "[a]ll citizens of Missouri, and their heirs and survivors, who have (1) suffered or presently suffer injury or addiction; and/or (2) died from DFE intoxication (including acute 1,1-Difluroethane intoxication or equivalent post-mortem cause of death terminology), arising from inhaling DFE-based liquid aerosol" products created and sold by Defendants. (Doc. 1, p. 65, ¶ 163; *see generally* Doc. 1, pp. 65-71, ¶¶ 163-173.)

Defendants argue the case should be transferred to the District of Kansas because venue is improper in this District; alternatively, they ask that the case be transferred to the District of Kansas for the parties' convenience. Defendants do not allege this Court lacks personal jurisdiction over them; they only challenge venue. Defendants also seek to strike the Rule 23 Class Action Allegations in the Complaint. Plaintiff opposes both Motions, and the Court resolves the parties' arguments below.

---

[5] Plaintiff also includes "Count X" in his Complaint which seeks "Punitive and/or Aggravating Circumstances Damages;" however, this is a form of relief rather than a cause of action, so the Court does not list it here.

3

## ANALYSIS

### A. Venue

Plaintiff contends that venue is proper in the Western District of Missouri under 28 U.S.C. § 1391(b)(2), which provides venue is permitted in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" "[V]enue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). This analysis only looks to the substantiality of the events in a district, not which forum "is the 'best' venue." *Steen v. Murray*, 770 F.3d 698, 702 (8th Cir. 2014) (citing *Setco Ent. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994)). Plaintiff claims venue is proper in the Western District of Missouri because (1) a substantial portion of Decedent's addiction, which constitutes part of the injury in this case, occurred in this District and (2) a substantial number of the relevant sales of computer duster occurred in this District.

#### 1. The Location of Decedent's Injuries

Plaintiff first argues venue is appropriate in this District because Decedent's injuries, including his addiction, occurred in this District. However, this argument misapprehends Eighth Circuit caselaw on this issue. Because § 1391(b) protects defendants, "the [C]ourt's focus must be on the relevant activities of the defendant" in the forum state not on the effect of those activities on the plaintiff in the forum state. *Steen*, 770 F.3d at 703; *Woodke*, 70 F.3d at 985. Thus, the Court rejects Plaintiff's arguments and concludes the location of Decedent's injury cannot establish venue in this District.

#### 2. Sales of the Product at Issue

Plaintiff next argues that because Decedent purchased the majority of duster cans in this District, venue is proper here. Thus, the Court considers whether sale of a product constitutes a

4

"substantial part of events giving rise to the claim," 28 U.S.C. § 1391(b)(2), and concludes that, for the claims raised in this case, sale of a product in this District establishes venue.

The sale of the product is an essential element of each of Plaintiff's claims. *See, e.g.*, Mo. Rev. Stat. 537.760(1) (the first element of a strict products liability claim in Missouri is "transferr[ing] a product in the course of [] business."); *Metty v. Shurfine Cent. Corp.*, 736 S.W.2d 527, 530 (Mo. Ct. App. 1987) (in Missouri, the sale of goods is the first element in proving a breach of the implied warranty of merchantability); *Stefl v. Medtronic, Inc.*, 916 S.W.2d 879, 882 (Mo. Ct. App. 1996) (the first element of a breach of express warranty claim in Missouri is the sale of the goods). Further, to prove a products liability claim (including a wrongful death claim), the product must necessarily pass into the consumer's hands; if a company designed a defective product which it does not sell to consumers, no cause of action accrues. And if a store makes false claims to a customer or describes a warranty that it would later breach, but the customer never purchases the product, no cause of action accrues. Thus, the act of passing the product to the customer is a substantial part of Plaintiff's claims.

Relying on *Woodke* and *Steen*, Defendants argue the location of the sale cannot constitute a substantial event giving rise to the claim. *Woodke* and *Steen* stand for the principle that "an event does not 'give rise to the claim' simply because the alleged wrongful conduct would have been impossible without the event[;]" the event must be directly related to the wrongfulness alleged in the claim. *Steen*, 770 F.3d at 704 (the location where the parties entered into a contract for legal representation was not a substantial event giving rise to a legal malpractice claim, where the malpractice occurred elsewhere.); *see also Woodke*, 70 F.3d at 985-86 (the manufacture of a product was not a substantial event giving rise to an claim of later improperly passing off that product, because the wrongfulness of the plaintiff's claim had nothing to do with manufacturing the product). However, the circumstances of those cases can be distinguished from the facts in this case, largely

5

because the act of passing the computer duster to Decedent is inextricably linked to the wrongfulness of Plaintiff's claims.

Nonetheless, because the Court must focus on the relevant activities of Defendants, the Court concludes venue must be proper as to each claim, *e.g.*, *Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir. 1985); *see also In re: Samsung Elec. Co.*, 2 F.4th 1371, 1377 (Fed. Cir. 2021); *Universal Premium Acceptance Corp. v. Oxford Bank and Trust*, 277 F. Supp. 2d 1120, 1128 (D. Kan. 2003), and to each Defendant. Decedent bought duster cans in Missouri from the Office Depot Defendants and the Walmart Defendants, and those cans were manufactured by AW, Norazza, and TCC; thus, venue is proper as to those Defendants. However, the MicroCenter Defendants have no stores in Missouri, and Plaintiff provides no evidence or allegations of any actions by the MicroCenter Defendants in this District. Therefore, venue is proper in this District only as to the Office Depo Defendants, the Walmart Defendant, AW, Norazza, and TCC, but not as to the MicroCenter Defendants.

### B. Transfer to the District of Kansas for Convenience

Because venue is only proper in the Western District of Missouri for some, but not all, of the Defendants, the Court must decide the best way to move forward. While venue is only proper for some Defendants in the Western District of Missouri, Decedent is alleged to have bought cans from *all* Defendants in Kansas, making it a proper venue for all claims for the same reasons as described above.

Defendants ask that the case be transferred to the District of Kansas pursuant to 28 U.S.C. § 1404(a). The Court may transfer a case to another district where venue is proper for "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." 28 U.S.C. § 1404(a). "[C]ourts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Terra*

*Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) (internal citations omitted).

Accordingly, a plaintiff's choice of forum will generally not be disturbed "unless that balance is strongly in favor of" transfer. *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 927 (W.D. Mo. 1985). "Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." *Terra Int'l*, 119 F.3d at 696-97 (quotation omitted). The Court may transfer venue of all claims to the District of Kansas if the balance of conveniences and the interests of justice strongly favor transfer.

### i. Balance of Conveniences

In balancing the conveniences, the Court weighs "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Terra Int'l,* 119 F.3d at 696. "The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)." *Houk*, 613 F. Supp. at 928.

Defendants do not demonstrate that it would be more convenient for any representatives or witnesses coming from out of state to travel to the District of Kansas rather than the Western District of Missouri, especially as the two courthouses are less than five miles from each other and are served by the same airport.[6] Similarly, there is no reason why the local witnesses would be less available traveling to the Western District of Missouri than they would be to the District of Kansas. While Decedent died in Kansas, and therefore the records of his death would be most easily accessible

---

[6] The Court takes judicial notice of the fact that the buildings in which the District of Kansas and Western District of Missouri sit are only 2.9 miles apart, which is a seven-minute drive. *See Driving Directions from the Charles E. Whittaker Courthouse to the Robert J. Dole Courthouse*, Google Maps, http://maps.google.com (follow "Get Directions" hyperlink; then search "A" for the "Charles E. Whittaker Courthouse" and search "B" for the "Robert J. Dole Courthouse"); *see also Kizzee v. Am. Fam. Mut. Ins. Co.*, 2011 WL 13290812, at *2 (W.D. Mo. Mar. 25, 2011).

there, the Court is not persuaded that the burden of securing these records is so great that it necessitates transfer to the District of Kansas. Finally, even if Kansas law governs Plaintiff's claims (which the Court does not yet determine)[7] the application of Kansas law is not so onerous as to require transfer. For these reasons, the relative balance of conveniences is neutral.

*ii. Interests of Justice*

The interests of justice, however, demonstrate transfer to the District of Kansas is appropriate. To evaluate the interests of justice in these circumstances, the Court considers "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l*, 119 F.3d at 696. The parties agree that factors three, four, and five are neutral, so, the Court will only consider the remaining factors.

Judicial economy weighs strongly in favor of transfer. Because venue is not proper in this District with respect to the claims against the MicroCenter Defendants, the claims against the MicroCenter Defendants would likely end up in another district (either by this Court's dismissal and Plaintiff's refiling of their claims in another district or severing the claims against the MicroCenter Defendants and sending them to another district). To split claims by a single Plaintiff with many common issues of fact and law into two separate cases across two districts would be a waste of judicial resources. To allow these claims to stay joined also avoids inconsistent rulings of law or findings of fact. It is therefore in the interest of judicial economy to transfer the case to a single district in which venue would be proper for all claims.[8]

---

[7] While conflict of law and which state's law applies are factors in this consideration, the Court does not here decide which state's law applies. The Court can properly consider the issue of transfer without making a final conclusion on an issue that has yet to be fully briefed by the parties.

[8] Additionally, Defendants reference that the District of Kansas already has two very similar cases filed by the same Plaintiff's counsel which share some of the same Defendants. *Messerli v. AW Distrib., Inc.*, No. 2:22-cv-02305 (D.

8

Next, Plaintiff is not a resident of this District, *see, e.g.*, *Turner v. ILG Techs., LLC*, 2022 WL 4543209, at *8 (W.D. Mo. Sept. 28, 2022), so the second factor is afforded less weight here.  *See also Houk*, 613 F. Supp. at 927 (W.D. Mo.1985).

The parties dispute whether Plaintiff's claims are governed by Missouri law or Kansas law. Even if Plaintiff's claims are properly evaluated under Kansas law, the issues are not so complex that the case would be better handled by one District over the other.  The *Messerli* case, for example, deals with similar legal issues as may arise in this case, so the issues here are not novel.[9]  Regardless, this factor is ultimately neutral.

The balance of conveniences is neutral, but the interests of justice strongly favor transfer to the District of Kansas to preserve judicial economy and avoid inconsistencies between cases. Because the claims against the MicroCenter Defendants must be transferred to Kansas, the interests of justice support transferring the claims against the remaining Defendants to the District of Kansas as well.

---

Kan.); *Leet v. AW Distrib., Inc.*, No. 2:23-cv-02322 (D. Kan.).  However, the Plaintiffs in these cases are different, as are most of the Defendants.  In *Leet* and *Messerli*, the plaintiffs assert their causes of action against A.W. Distributing, Inc., A.W. Products Sales & Marketing Inc., Falcon Safety Products, Inc., and Norazza, Inc.; all but one are Defendants in this case.  But Plaintiff here also charges ten additional Defendants here who are not included in either Kansas case. Thus, the content and scope of the factual issues are substantially different.  To the extent that judicial economy would favor Kansas for this reason, it is only to a small degree.

[9] The plaintiff in *Messerli* is in the process of appealing to the Tenth Circuit, *Messerli v. AW Distributing, et al.*, No. 23-3241 (10th Cir.) (oral arguments were heard November 22, 2024), and one of the issues is whether questions of Kansas law should be certified to the Kansas Supreme Court.  To the extent that there are unsettled issues of law in Kansas on this topic, further direction from the Kansas Supreme Court may be forthcoming.

9

## CONCLUSION

Because (1) venue is only proper in this District as to some of the Defendants, (2) venue is proper in the District of Kansas for all Defendants, and (2) the interests of justice strongly favor transfer, Defendants' Motion to Transfer Venue, (Doc. 55), is **GRANTED**.[10]

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: May 21, 2025      UNITED STATES DISTRICT COURT

---

[10] Defendants have also filed a Motion to Strike, (Doc. 58), but because the Court is transferring this case to the District of Kansas, the Court will rule on this Motion.